J-S21006-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARYL T. HAYDEN | : | |
| | : | |
| Appellant | : | No. 106 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 6, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008106-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| :--- | :--- | :---: |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DARYL T. HAYDEN | : | |
| | : | |
| Appellant | : | No. 108 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 6, 2018
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008105-2017

BEFORE: LAZARUS, J., DUBOW, J., and MUSMANNO, J.

MEMORANDUM BY LAZARUS, J.:                    FILED MAY 08, 2020

Daryl T. Hayden appeals from the judgment of sentence,[1] entered in the

Court of Common Pleas of Allegheny County, following his convictions for one

_____

[1] By filing two separate notices of appeal with one lower docket number on each notice, Hayden has complied with the dictates of Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018), which held that "where a single order

count of rape,[2] three counts of involuntary deviate sexual intercourse by forcible compulsion (IDSI),[3] one count of attempted IDSI,[4] and two counts each of sexual assault—serious bodily injury,[5] indecent assault—forcible compulsion,[6] aggravated assault,[7] strangulation in connection with sexual violence,[8] terroristic threats,[9] and possession of an instrument of crime (PIC).[10] Upon careful review, we affirm.

Hayden's convictions arise from two separate incidents that occurred in June of 2017.[11] The trial court set forth the relevant facts, in part, as follows:

_____

resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases." Id. at 977. See also Pa.R.A.P. 341(a).

[2] 18 Pa.C.S.A. § 3121(a)(1).

[3] 18 Pa.C.S.A. § 3123(a)(1).

[4] Id.; 18 Pa.C.S.A. § 901(a).

[5] 18 Pa.C.S.A. § 3124.1.

[6] 18 Pa.C.S.A. § 3126(a)(1).

[7] 18 Pa.C.S.A. § 2702(a)(1).

[8] 18 Pa.C.S.A. § 2718(a)(1).

[9] 18 Pa.C.S.A. § 2706(a)(1).

[10] 18 Pa.C.S.A. § 907(a).

[11] Hayden was charged at CC Nos. 201708105 and 201708106 in connection with his assaults against M.D. and L.H., respectively. The cases were consolidated for trial before the Honorable Mark Tranquilli. See N.T. Trial, 6/6/18, Vols. 1 and 2.

In the early morning hours on June 10, 2017, victim M.D. encountered [Hayden] while walking on Frankstown Avenue in the area of Homewood. The two had never met before and engaged in a conversation wherein [Hayden] agreed to give [M.D.] crack cocaine in exchange for sex. [Hayden] initially suggested [they go to] his Mother's house, or someone by the name of "Mama Jean[,]" as they walked in search of a location. They eventually settled on the football field located behind Westinghouse High School. [M.D.]'s testimony was uncontradicted by [Hayden] up to this point.

[M.D.] testified that once at the football field[, Hayden] offered her a piece of crack; she tasted it by putting it to her tongue and determined that it was fake. She rejected the crack and began walking away when [Hayden] grabbed her from behind by placing his arm around her throat, choking her, while simultaneously bringing her to her knees. [Hayden] positioned himself on top of [M.D.] and repeatedly punched her [in] the head upwards of fifteen (15) to twenty (20) times. M.D. recalled her nose hurt and that she was choking on blood when [Hayden] displayed a box cutter, threatening to kill her with it. She testified that she was in fear for her life and grabbed for what she thought was a stick and began swinging it at [Hayden]. He continued to strangle her, and with the box cutter in hand, ordered [M.D.] to strip naked. She complied and[,] at his direction, stood up and walked over to the corner of the building where he forced her to perform oral sex. [Hayden] then removed his penis from her mouth, retrieved a condom from her purse[,] and ordered her to put the condom on him using her mouth. He then forced her to perform oral sex a second time. M.D. testified that she was then made to stand up, bend over, and was raped anally by [Hayden]. M.D. did not consent to any of the sexual acts. [Hayden] told her to get dressed and while in considerable pain, she managed to put on some clothes, grab her belongings[,] and walk to a nearby house for help.[12] That homeowner called police and M.D. was transported to a nearby hospital by ambulance where she was treated for five (5) days for a blood clot on her brain, concussion,

_____

[12] The homeowner, Jenee Johnson, testified that she encountered M.D. banging on her front door early that morning, bleeding from her face, nose, and mouth, repeatedly stating that she had been beaten up and raped. N.T. Trial, 6/6/18, Vol. 1 at 147-49.

broken nose, and bruising to the right side of her face and eyes, which were swollen shut.

Alternatively, [Hayden] testified to the events at the football field as consensual sex. He disputed [M.D.]'s testimony that she rejected the crack because it [] was fake, informing the jury that M.D. in fact smoked the drugs with her own crack pipe. [Hayden] continued to counter M.D.'s testimony by contending that she removed her own clothes and willingly participated in sex. He explained to the jury that it was only after [M.D.] asked for money, despite their "agreement," that he protected himself by slapping her several times in the face with an open hand.

An eerily similar set [of] events played out eleven (11) days later during the early morning hours on June 21, 2017, when a second victim, L.H., encountered [Hayden] on Frankstown Avenue in Homewood.[13] L.H. testified that she was six (6) months pregnant and was walking to a friend's house when [Hayden], who she had never met before, approached her asking for a cigarette. She described to the jury that while walking, [Hayden] asked her if she wanted to go to his house, only to tell L.H. a short time later that they couldn't because [another woman] was home. When asked why she was with [Hayden], L.H. explained that [Hayden] wanted to talk, but she could not recall what they discussed. They eventually reached the top steps that lead down to the football field behind Westinghouse High School. It is at this time that [Hayden] asked [L.H.] where they were going to have sex. L.H. refused, telling the jury that she was six (6) months pregnant and that having sex was "not the plan." L.H. described how [Hayden] then put his arm around her neck and dragged her backwards down the steps onto the field. While choking her, [Hayden] removed her head scarf, one shoe, and pant leg and made [L.H.] retrieve a condom from her purse. [Hayden] put the condom on himself and attempted vaginal sex. L.H. resisted, broke free[,] and ran, screaming and crying for help[14] away from the dark field

_____

[13] Neither M.D. nor L.H. knew each other when the assaults occurred. N.T. Trial, 6/6/18, Vol. 1 at 131; N.T. Trial, 6/6/18, Vol. 2 at 58.

[14] Darren Holmes, who lived close to Westinghouse High School, testified that he heard a woman yelling for help during the early hours of June 21; at first, he ignored it, but called 911 after the screaming continued and he heard "the fear in her voice." N.T. Trial, 6/6/18, Vol. 2 at 61-62.

and toward the steps, which were lit. [Hayden], for the second time, grabbed [L.H.] around her throat and dragged her down the steps back onto the unlit field. While continuing to drag her, he pulled out a box cutter and threatened to stab her if she kept screaming. In an effort to get her to stop screaming, [L.H.] testified that [Hayden] would choke her to the point where she couldn't breathe, or hit her. After he dragged her deeper into the football field, he removed her other shoe and her pants completely. [Hayden] attempted to anally rape her, telling [L.H.] she was "going to give it to me from the back." Although he did not penetrate her anally, sometime during the struggle [Hayden] did penetrate her vaginally. L.H. did not consent to any sexual acts, including forced oral sex that she described while on cross examination. The assault ended when [Hayden] ran off after seeing flashlights at the top of the steps, which [turned out] to be the police responding to a 911 call for a woman screaming.[15]

[Hayden] offered the jury a different version regarding his interaction with L.H. He testified that he encountered [L.H.] on Frankstown Avenue and asked her for a cigarette after which the two talked about getting high. [Hayden] could see that she was pregnant, remembering that he jokingly asked [L.H.] if she "swallowed a basketball." All the while, he contends, [L.H.] denied she was pregnant. [Hayden] testified that L.H. purchased crack with money [he] had given her and that she offered to do "something" for it, meaning exchange sex for drugs. He stated that they went to Westinghouse High School at his suggestion after the house he was considering going to with L.H. did not pan out. Contrary to L.H.'s testimony, [Hayden] told the jury that she walked willingly down to the field[] and appeared to smoke the crack he gave her, yet in apparent conflict with his own testimony, maintained that she ran off after he handed her the drugs. According to [Hayden], despite running off, L.H. freely came back to the field after he complained about her leaving without him getting his half of the bargain, later adding that he grabbed her by the arm. He testified that after [L.H.] rejoined him on the football field[,] they engaged in consensual sex, denying any type of physical assault. He explained that after hearing two (2) car

_____

[15] L.H. was treated at a nearby hospital for injuries, which included a facial contusion, scratches on her neck, and bruising to her face and arms. N.T. Trial, 6/6/18, Vol. 1 at 27-31, 67.

> doors close and seeing flashlights, he assumed the police were at the field and ran off because he had crack cocaine on his person.

Trial Court Opinion, 1/2/19, at 3-7.

On June 22, 2017, the day following L.H.'s assault, three Pittsburgh police officers located Hayden at an address in the Homewood area and approached him, explaining that they had a search warrant for his DNA in connection with a rape investigation. N.T. Suppression Hearing, 10/23/17, at 6-10. When asked whether Hayden preferred the police take his DNA in front of the house or at the police station, he responded that he wanted to go to the station "to talk more about what this was all about." Id. at 10. At police headquarters, Detective Colleen Burst and Sergeant William Fleske interviewed Hayden after reciting him his Miranda[16] rights; the interview, which was videotaped, was ultimately played for the jury. Id. at 40-42. Hayden filed a pre-trial motion to suppress the statements he made to police, arguing that they were given in violation of his Fifth Amendment right to counsel, which the court denied after a hearing on October 24, 2017. Id.

On June 6, 2018, Hayden proceeded to a jury trial where he was found guilty of the above-stated crimes. On September 6, 2018, the trial court, with the benefit of a pre-sentence investigation (PSI) report, imposed an aggregate

_____

[16] Miranda v. Arizona, 384 U.S. 436 (1966).

sentence of 77½ to 143 years imprisonment: 30½ to 61 years in connection with the assault on M.D., and 41-82 years in connection with the assault on L.H, to run consecutively.[17] Hayden timely filed a post-sentence motion pro se which was amended by appointed counsel on December 13, 2018. The trial court denied the motion on December 14, 2018. Hayden timely filed a notice of appeal[18] and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. He raises the following issues for our review:

1. Whether the convictions for [r]ape and associated charges were against the weight of the evidence where [Hayden] credibly testified that the encounter[s] [were] consensual?

2. Whether the trial court abused its discretion by imposing an aggregate sentence of not less than 71.5 nor more than 1[4]3 years of incarceration where sentence was imposed at each count of each information consecutively without support from the record?

---

[17] At CC No. 201708105, the court imposed a sentence of imprisonment of 8½ to 17 years for aggravated assault, 6-12 years for strangulation, 9-18 years for two counts of IDSI, 2-4 years for indecent assault, 1-2 years for terroristic threats, and 1-2 years for PIC; the sexual assault conviction merged for sentencing purposes. Order, 9/6/18; see also N.T. Sentencing, 9/6/18, at 24-26. At CC No. 201708106, the court sentenced Hayden to 7-14 years for aggravated assault, 6-12 years for strangulation, 9-18 years for rape, 8-16 years for criminal attempt (IDSI), 9-18 years for IDSI, 1-2 years for terroristic threats, 1-2 years for PIC; the sexual assault and indecent assault convictions merged for sentencing purposes. See id. at 26-28. The sentencing judge informed Hayden that he imposed sentences "smack dab in the middle of the standard range" for each crime. Id. at 28.

[18] On August 22, 2019, this Court sua sponte consolidated Hayden's separate appeals from each docket number in accordance with Pa.R.A.P. 513. Order, 7/22/19.

> 3. Whether the [c]ourt erred in denying [Hayden]'s motion to suppress statement[s] where [Hayden] clearly and unambiguously requested counsel and detectives continued an interrogation?

Brief of Appellant, at 3.

Hayden's first issue challenges whether the guilty verdicts as to rape and IDSI were against the weight of the evidence.[19] Id. at 14-15. He maintains that he is entitled to a new trial because the guilty verdicts shock one's sense of justice, given that his testimony was more "believable" and "logical" than that of M.D. or L.H. Id. at 16-20; see also Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003) (when challenging weight of

_____

[19] Although Hayden purports to challenge only the weight of the evidence in his statement of questions involved, he improperly conflates this claim with a challenge to the sufficiency of the evidence in the argument section of his brief: he begins his argument by stating that he challenges "the sufficiency of the evidence presented during [] trial to sustain his rape conviction" before discussing the standard of review for a weight claim. See Brief of Appellant, at 14. He further submits that the Commonwealth "failed to present evidence that the sexual intercourse . . . involving [Hayden] and [M.D.] and [L.H.] [] was nonconsensual," before listing the elements of rape and IDSI (including lack of consent). Id. at 14-15. See Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. Super. 2000) (sufficiency and weight challenges are distinct legal claims that entitle successful appellants to different relief); see also Commonwealth v. Richard, 150 A.3d 504, 516 (Pa. Super. 2016) (weight challenge concedes that Commonwealth produced sufficient evidence of each element of crime "but questions which evidence is to be believed"). To the extent Hayden seeks to challenge the sufficiency of the evidence, that contention is waived based on his failure to preserve it in his Rule 1925(b) statement. See Commonwealth v. Mattison, 82 A.3d 386, 393 (Pa. 2013) (where sufficiency challenge not raised in Rule 1925(b) statement, it is waived). Hayden preserved a weight of the evidence challenge by raising it in his post-sentence motions. See Pa.R.Crim.P. 607. We address his weight claim to the extent it can be discerned from his appellate brief.

evidence, new trial may be granted only where verdict shocks one's sense of justice).

A motion for a new trial based on the claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Commonwealth v. Clay, 64 A.3d 1049, 1054 (Pa. 2013). It is not our role, as a reviewing court, to reweigh the evidence and substitute our judgment for that of the fact-finder. Commonwealth v. Mitchell, 902 A.2d 430, 449 (Pa. 2006). Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. Commonwealth v. Widmer, 744 A.2d 745, 753 (Pa. 2000). An abuse of discretion is not merely an error in judgment; the judgment must be "manifestly unreasonable or [] the law is not applied or [] the record shows that the action is a result of partiality, prejudice, bias[,] or ill will." Id.

Moreover, when a weight challenge "is predicated on the credibility of trial testimony, [appellate] review of the trial court's decision is extremely limited. Generally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." Commonwealth v. Bowen, 55 A.3d 1254, 1262 (Pa. Super. 2012). Finally, we note that, "[b]ecause the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons

advanced by the trial judge when reviewing a trial court's determination [whether] the verdict is against the weight of the evidence." Id.

We conclude that the trial court did not abuse its discretion in denying Hayden relief on his weight claim. The trial court considered Hayden's claim and deemed it to lack merit.[20] See Trial Court Opinion, 1/2/19, at 9-11. We agree. As the trial court correctly noted, the jury's choice not to believe Hayden's version of events was purely within its discretion. Trial Court Opinion, 1/2/19, at 10. It is well-settled that the "trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." See Commonwealth v. Adams, 882 A.2d 496, 499 (Pa. Super. 2005). The Commonwealth presented overwhelming evidence of Hayden's guilt, including testimony from M.D., L.H.,

_____

[20] The trial court determined that, in order to conclude that the verdicts were against the weight of the evidence, it requires

> more than a finding that the victims were not credible. It calls for the complete disregard of the Commonwealth's case: the witnesses that called 911[,] the physical evidence at the scene[,] the observations by responding officers[,] the photographs[,] and the medical reports. It calls for one to ignore the predatory behavior reflected by the Commonwealth's evidence: that these encounters occurred at the same time of day, at the same location[,] under the same circumstances[,] involving the use of a sharp weapon, a mere eleven (11) days apart. After a thorough review of the record, the [c]ourt does not find that the verdicts are so contrary to the evidence as to shock one's sense of justice and make an award of a new trial imperative.

Trial Court Opinion, 1/2/19, at 10-11.

and responding officers, medical records, and photographs corroborating the vicious attacks both victims endured. The fact that Hayden presented a different version of events than M.D. and L.H. does not require a finding that the verdict was against the weight of the evidence. Commonwealth v. Meachum, 711 A.2d 1029, 1035 (Pa. Super. 1998). "The jury found the Commonwealth's evidence to be credible, and we will not disturb this finding on appeal." Id.

Next, Hayden claims that the sentencing court abused its discretion and imposed a manifestly excessive sentence. Brief of Appellant, at 3. This represents a challenge to the discretionary aspects of his sentence. Commonwealth v. Prestidge, 539 A.2d 439, 441 (Pa. Super. 1988). An appeal raising the discretionary aspects of sentencing is not guaranteed of right; rather it is considered a petition for permission to appeal. Commonwealth v. Williams, 562 A.2d 1385, 1368-87 (Pa. Super. 1989) (en banc). In order to reach the merits of a discretionary aspects claim, we must engage in a four-part analysis to determine:

> (1) whether appellant has filed a timely notice of appeal, see Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, see Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.
>
> * * *
>
> The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question

> exists only when the appellant advances a colorable argument that the sentencing judge's actions were either:  (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

Commonwealth v. Griffin, 65 A.3d 932, 935-36 (Pa. Super. 2013) (citations and quotations omitted).

Here, Hayden has filed a timely notice of appeal and complied with Rule 2119(f) by including a statement of the reasons relied on for allowance of appeal.  Specifically, he raises two claims:  first, that the trial court abused its discretion by sentencing him "without due or meaningful consideration of the statutory factors of 42 Pa.C.S.A. § 9721(b)," and second, that the court imposed a manifestly excessive sentence by imposing consecutive sentences at each count of the criminal information.  Brief of Appellant, at 13.  See also 42 Pa.C.S.A. § 9721(b) (court shall consider defendant's rehabilitative needs and protection of the public in imposing sentence).  Hayden's first claim would normally present a substantial question.  See Commonwealth v. Derry, 150 A.3d 987, 995 (Pa. Super. 2016) (failure to consider section 9721(b) factors raises substantial question).  However, Hayden failed to preserve this claim at sentencing or in his post-sentence motion to reconsider or modify sentence. See N.T. Sentencing, 9/6/18; Post Sentence Motions, 9/26/18.  Accordingly, this claim is waived.  Griffin, supra.

Regarding Hayden's second claim, this Court has consistently held that "excessiveness claims premised on an imposition of consecutive sentences do not raise a substantial question for our review."  See, e.g., Commonwealth

v. Radecki, 180 A.3d 441, 468 (citing supporting caselaw). Therefore, Hayden is not permitted to appeal on these grounds. Griffin, supra.

Finally, Hayden contends that the trial court erred in denying his motion to suppress statements he made to Detective Burst, where police continued interrogating him after a clear and unambiguous request for counsel. Brief of Appellant, at 3.

> Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous.

Commonwealth v. Jones, 988 A.2d 649, 654 (Pa. 2010) (citation omitted).

The law surrounding a defendant's constitutional right to counsel is well-settled: "where an individual states that he wants an attorney, the interrogation must cease until an attorney is present." Commonwealth v. Kunkle, 79 A.3d 1173, 1183 (Pa. Super. 2013). However, if a statement regarding the right to counsel is "ambiguous or equivocal, the police are not required to end the interrogation, nor are they required to ask questions designed to clarify whether the suspect is invoking his Miranda rights." Commonwealth v. Frein, 206 A.3d 1049, 1065 (Pa. 2019).

Here, the record fully supports the trial court's denial of Hayden's suppression motion. When police approached Hayden in connection with their investigation, Hayden asked that his DNA be taken at police headquarters because he wanted to talk more about the accusations against him. N.T. Suppression Hearing, 10/23/17, at 7-13. At the beginning of the interview, when Hayden began speaking, Sergeant Fleske interrupted him and told him that he had to be informed of his Miranda rights. Interview Transcript, 7/22/17, at 7-8. After reciting them to Hayden, the following exchange occurred:

> Detective Burst: If you exercise the right not to answer, questioning will stop. Do you understand that?
>
> [Hayden]: Yes.
>
> Detective Burst: Okay. Knowing these rights, are you willing to waive your rights and talk to us without a lawyer?
>
> [Hayden]: I would rather talk to a lawyer but I really want to know – two women said that I sexually assaulted them?
>
> Detective Burst: Yeah, and that's what we want to talk about. And at any time you can just say, no, I don't want to answer any further questions.
>
> * * *
>
> Detective Burst: We just want to hear your side of what happened, you know what I mean?
>
> [Hayden]: Oh, okay.
>
> Detective Burst: Are you willing to do that?
>
> [Hayden]: Yeah.

- 14 -

* * *

> Sergeant Fleske: Okay. Whenever you want to stop, you say stop and we'll be done.
>
> [Hayden]: Okay.

Id. at 10-14 (emphasis added).[21]

Hayden contends simply that he "indicated that he wished to speak with an attorney," and the detectives ignored his request in violation of his right to counsel. Brief of Appellant, at 27. However, a review of the precise words Hayden used during questioning, as well as the attendant circumstances, fully supports the suppression court's conclusion that his request for counsel was "at best ambiguous and equivocal." Suppression Court's Findings of Fact and Legal Conclusions, 4/9/18, at 32. In Davis v. United States, 512 U.S. 452 (1994), the United States Supreme Court held that the defendant's statement that, "Maybe I should get a lawyer," during police interrogation did not constitute a clear and unambiguous request for counsel. Id. at 462. The Court further concluded that police may "continue questioning until and unless the suspect clearly requests an attorney." Id. at 459.

Here, after Hayden volunteered to go to police headquarters to talk about the rape allegations against him, he was Mirandized and specifically asked whether he was willing to continue the interview. His statement that

_____

[21] Detective Burst also testified at the suppression hearing that Hayden "never said he wanted an attorney," and, if he had done so, the conversation would have ended. N.T. Suppression Hearing, 10/23/17, at 60-61.

- 15 -

he "would rather talk to a lawyer but really want[s] to know" about the content of those allegations is a far cry from a clear and unambiguous request for counsel. Davis, supra; see also Commonwealth v. Martin, 101 A.3d 706, 726 (Pa. 2014) (defendant "did not actually request an attorney" by stating he "might be invoking the right to counsel" before continuing conversation immediately). Thus, the police were not required to cease their questioning, and the court properly denied Hayden's suppression motion. Frein, supra.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/08/2020